MORRIS, Judge.
 

 John L. Norman appeals his judgments and sentences for driving with license suspended as a habitual offender and grand theft of a motor vehicle. He specifically challenges the trial court’s denial of his motion to withdraw plea after sentencing filed pursuant to Florida Rule of Criminal Procedure 3.170(0- Under the facts of this case, when Norman failed to return from a furlough and appear at sentencing as agreed, the trial court was not required to allow Norman to withdraw his plea and could impose the maximum legal sentence. Accordingly, the trial court properly denied Norman’s motion to withdraw plea, and we affirm his judgments and sentences.
 

 Norman entered a no contest plea to the charges on June 1, 2007, pursuant to a plea agreement that he would be sentenced to concurrent sentences of 27.7 months in prison. The State agreed to nolle pros a charge against him for driving under the influence. The State presented the plea agreement to the court, and Norman then requested a furlough. The prosecutor asserted that a furlough was not made part of the plea agreement with the State because the prosecutor did not “necessarily agree to it”; however, the prosecutor stated that he told Norman he would leave it
 
 *773
 
 up to the trial court’s discretion. In accepting Norman’s plea and setting off his sentencing for a furlough, the trial court stated “all bets would be off if you don’t show up.” His sentencing was set for the date he was to return from the furlough. However, he failed to return from the furlough and appear at the sentencing as agreed. Consequently, at a later hearing at which Norman was present, the trial court sentenced Norman to the maximum legal sentence, two consecutive sentences of five years in prison.
 

 After his sentencing, Norman filed a motion to withdraw plea claiming that the trial court violated his plea agreement by sentencing him beyond the agreed 27.7 months and that his appearance at sentencing had not been made a condition of his plea agreement. The trial court denied his motion, reasoning that the plea hearing transcript indicated that the terms of the plea agreement included the furlough and that the terms of the furlough were clearly understood by Norman.
 

 On appeal, just as he did in the trial court, Norman contends that the trial court erred in sentencing him to the maximum sentences after he failed to appear at sentencing because the furlough was not made a condition of his plea agreement. He argues that the trial court agreed to the furlough after it accepted his plea agreement with the State and that the trial court never confirmed that Norman understood the consequences of failing to abide by the terms of the furlough. He asserts that at sentencing, he should have been allowed to withdraw his plea when the trial court decided to not honor his plea agreement with the State.
 

 “[Rule] 3.170(Z) permits a defendant to file a motion to withdraw a guilty plea after sentencing pursuant to the grounds in Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii), which include a violation of a plea agreement and an involuntary plea.”
 
 Griffin v. State,
 
 899 So.2d 514, 515 (Fla. 2d DCA 2005). “To support a withdrawal of a plea after sentencing, the defendant must demonstrate a manifest injustice.”
 
 Id.
 
 (citing
 
 State v. Partlow,
 
 840 So.2d 1040, 1042 (Fla.2003)). This court reviews the denial of a motion to withdraw plea for abuse of discretion.
 
 White v. State,
 
 15 So.3d 833, 835 (Fla. 2d DCA 2009).
 

 A trial court may not unilaterally impose additional conditions of a plea agreement after it has formally accepted the plea agreement without the acquiescence of the defendant or his counsel.
 
 Russell v. State,
 
 645 So.2d 1087, 1088 (Fla. 4th DCA 1994). On the other hand, a trial court may impose additional conditions as a valid modification of the plea agreement if the defendant clearly and unequivocally understands and accepts those terms.
 
 Fambro v. State,
 
 581 So.2d 199, 201 (Fla. 4th DCA 1991).
 

 A classic
 
 Quarterman
 
 agreement is made when a defendant agrees to a “specific sentence with the caveat that the trial court could impose any greater lawful sentence if he or she” does not appear at sentencing.
 
 Neeld v. State,
 
 977 So.2d 740, 743 (Fla. 2d DCA 2008) (discussing
 
 Quarterman v. State,
 
 527 So.2d 1380 (Fla.1988), and its application under the Criminal Punishment Code). We must decide whether Norman’s plea agreement was modified to include a
 
 Quarterman
 
 agreement and, if so, whether Norman clearly understood the terms of such agreement. If it was not properly made a part of his plea agreement, the trial court could not sentence him to the legal maximum sentence for failing to appear without first affording him the opportunity to withdraw his plea.
 
 See Moore v. State,
 
 489 So.2d 1215, 1216 (Fla. 2d DCA 1986);
 
 Bennett v.
 
 
 *774
 

 State,
 
 858 So.2d 1251, 1252 (Fla. 5th DCA 2003).
 

 In
 
 Henson v. State,
 
 977 So.2d 736, 737 (Fla. 2d DCA 2008), the defendant wished to enter a plea and the trial court indicated that it was willing to accept the plea for a sentence of 330 days in jail. The defendant then asked for a furlough, and the trial court stated that if the defendant were to get in “trouble” during the furlough, “all bets are off.”
 
 Id.
 
 at 738. After the defendant overslept and failed to appear at the original sentencing, the trial court imposed a sentence of two years in prison.
 

 This court, in
 
 Henson,
 
 held that the defendant should have been allowed to withdraw his plea because “the oral plea agreement did not contain a provision allowing the trial judge to sentence [him] to any lawful sentence if he did not appear on time for his sentencing hearing.”
 
 Id.
 
 at 739. This court noted that “both ‘trouble’ and ‘all bets are off are perhaps open to interpretation.”
 
 Id.
 
 at 739 n. 1.
 

 Here, Norman entered the plea in exchange for a sentence of 27.7 months in prison, but when Norman asked for a furlough, the trial court made the furlough part of the plea agreement. At the evi-dentiary hearing held on Norman’s motion to withdraw plea, Norman testified that he did not understand that the furlough was part of his plea agreement, but Norman’s position in this regard is refuted by the record. It is clear from the plea hearing transcript that once Norman asked for a furlough, the trial court intended for Norman’s furlough and appearance at sentencing to be made a condition of his plea agreement. It is also clear that Norman understood that his plea agreement was being modified to include the furlough.
 

 The transcript of the plea hearing reflects the following dialogue between the court and the prosecutor in Norman’s presence:
 

 [PROSECUTOR]: He’s pled today. He’ll — his actual sentence will be on that particular Friday.
 

 THE COURT: So I’m not sentencing now. We’re going—
 

 [PROSECUTOR]: My suggestion would be not to sentence today—
 

 THE COURT: Okay.
 

 [PROSECUTOR]: — Judge. The agreement is in place. If — so long as he reports as required on that Friday, then the Court will go along with the agreement as-—
 

 To confirm that Norman understood, the prosecutor engaged Norman as follows:
 

 [PROSECUTOR]: So long as you report on that Friday as required, then the Judge will impose a sentence that’s been agreed to.
 

 [NORMAN]: That we agreed to.
 

 [PROSECUTOR]: Other than that, you have not been sentenced and what we’ve agreed to is—
 

 [NORMAN]: Is pending—
 

 [PROSECUTOR]: — would be completely removed.
 

 [NORMAN]: Is pending based on that.
 

 We emphasize that when taking a plea that will incorporate a
 
 Quarterman
 
 agreement, it is essential that the trial court make very clear to the defendant that the agreed-upon sentence is conditioned upon the defendant’s subsequent timely appearance at the specifically articulated sentencing date and that his liberty during the furlough must be without violation of the law. It is also imperative that the trial court inform the defendant that if he fails to abide by these two conditions, the trial court is not required to allow him to withdraw his plea and he could be sentenced to the maximum sentence provided
 
 *775
 
 by law. In this regard, Norman argues that he did not understand that he could be sentenced to the maximum legal sentence if he failed to appear. On appeal, he contends that he understood “all bets are off’ to mean that he simply forfeited his right to the agreed-upon sentence of 27.7 months. At the evidentiary hearing on his motion to withdraw plea, Norman testified that he understood “all bets are off’ to mean that he “would lose [his] plea” and that his “plea would be no longer valid.”
 

 While the in-court dialogue is sufficient to demonstrate that Norman understood that the furlough was made part of his plea agreement, the in-court dialogue, standing alone, is not sufficient to demonstrate that Norman understood that he could be sentenced to the legal maximum sentence as a consequence of his failure to appear at the scheduled sentencing. However, the plea form signed by Norman contains a provision regarding the furlough; when that provision is considered in light of the discussion of that provision at the plea hearing, it is clear that Norman understood the consequences of his failure to appear.
 
 See Bocock v. State,
 
 689 So.2d 1265, 1266 (Fla. 2d DCA 1997) (relying on a provision in the plea agreement in concluding that defendant understood consequences of failing to appear at sentencing).
 

 The plea form in this case provides in paragraph 11 that violation of the furlough condition “could result in [the defendant’s] not being allowed to withdraw [his] plea and the Court[’s] being free to sentence [the defendant] in accordance with the legal máximums recognized under the law.” (Emphasis supplied.) Because the prosecutor did not agree to the furlough being part of Norman’s initial plea agreement with the State, this particular provision of the plea form was not filled out. But it was discussed between Norman and the prosecutor on the record at the plea hearing. In regard to the plea form in general, Norman stated that he read it and that he was “familiar with the plea form.” In regard to paragraph 11, the following occurred:
 

 [PROSECUTOR]: Okay. You read the remaining portions of this plea agreement; is that correct?
 

 [NORMAN]: Yes, sir.
 

 [PROSECUTOR]: All right.
 

 [NORMAN]: I didn’t look at that as far as—
 

 [PROSECUTOR]: That’s what we may—
 

 [NORMAN]: Okay.
 

 [PROSECUTOR]: — deal with as far as the — what you’re going to ask the Judge to do....
 

 The prosecutor went back to discuss the agreed-upon sentences of 27.7 months addressed in paragraph 6 of the plea form and then asked the following:
 

 [PROSECUTOR]: All right. As far as the remaining portions of this plea agreement, you’ve read all these, you understand the terms of it?
 

 [NORMAN]: Yes, sir.
 

 [PROSECUTOR]: I’ve incorporated 11, if the Judge chooses to go — follow through with your request today, and we’ll explain that to the Judge in a minute.
 

 The prosecutor then continued with another provision and finally asked the following:
 

 [PROSECUTOR]: All right. Do the terms of the plea agreement satisfy you, Mr. Norman?
 

 [NORMAN]: Yeah, as far as everything we’ve discussed and in regards to the — [paragraph] 11, you know—
 

 With regard to the consequences of his failure to appear at sentencing, it is clear from the transcript of the plea hearing
 
 *776
 
 that the prosecutor called Norman s attention to the terms of paragraph 11 of the plea form, that Norman read it before signing the plea form, and that Norman understood the terms of paragraph 11. At the evidentiary hearing on his motion to withdraw plea, Norman testified that he did not understand that if he failed to appear at sentencing, he could be sentenced to any lawful sentence, even though paragraph 11 of the plea form, which he read, signed, and understood, clearly states he could be.
 

 Because the record supports the trial court’s ruling that the trial court validly modified the plea agreement to include the furlough and that Norman understood that he could be sentenced to the maximum legal sentence if he failed to appear at sentencing, Norman has failed to demonstrate that a manifest injustice occurred in the trial court’s denial of his motion to withdraw plea. Accordingly, we affirm his judgments and sentences.
 

 Affirmed.
 

 WHATLEY and DAVIS, JJ„ Concur.