[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14700

Non-Argument Calendar

_____

BRIAN CARL RICHARDS,

　　　　　　　　　　　　　　　　　　Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

　　　　　　　　　　　　　　　　　　Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-02244-PGB-LRH

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Brian Richards, a state prisoner, appeals the denial of his federal petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, alleging ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). After careful review, we affirm.

## I.

Richards pled *nolo contendere* in a Florida trial court to a charge of petit theft with two prior convictions in exchange for the prosecutor's recommendation of a 180-day jail sentence. Before accepting his plea, the court warned Richards that if he failed to appear for sentencing, he would not get the benefit of his bargain with the state and instead would be subject to a potential maximum of five years in prison. Richards said he understood, and the court accepted his plea, but he then failed to appear for sentencing because he was arrested for new offenses stemming from a bank robbery. When sentencing eventually went forward after his conviction in the robbery case, the trial court imposed a five-year sentence, emphasizing its prior warnings to Richards and asserting that his "own conduct" resulted in the failure to appear.

Richards appealed, arguing that the trial court erred in imposing an enhanced sentence because his absence at sentencing was not willful. The state appellate court affirmed, citing *Orange v. State*, 983 So. 2d 4, 5–6 (Fla. Dist. Ct. App. 2007), for the

proposition that a failure to appear caused by incarceration for new crimes after entering the plea constitutes a willful breach of an agreement to appear.

Richards then sought postconviction relief under Rule 3.580, Fla. R. Crim. P., arguing that his counsel rendered ineffective assistance in three ways, two of which are relevant here: first, by failing to move to withdraw the plea agreement when the court announced it would not follow that agreement and instead imposed a five-year sentence; and second, by failing to advise him that he could contest the willfulness of his failure to appear, and to make such an argument to the trial court.[1]

A state postconviction court rejected these claims without an evidentiary hearing. As to the first claim, the court found that counsel had no basis to move to withdraw the plea. According to the court, under *Quarterman v. State*, 527 So. 2d 1380 (Fla. 1988), there was an express agreement concerning the consequences of failing to appear, so the trial court was permitted to impose an enhanced sentence without providing an opportunity for Richards to withdraw his plea. Therefore, according to the postconviction court, "counsel had no basis to file a motion to withdraw [Richards's] plea and there is no reasonable probability that such a motion would have been granted."

---

[1] We granted Richards a certificate of appealability ("COA") as to these two claims but denied a COA for his claim that counsel was ineffective for failing to request a transport order before the original sentencing.

As to the second claim, the state postconviction court found that it lacked merit because Richards "was arrested on new offenses after entering the agreement, which rendered his failure to appear willful." The court noted that counsel and Richards informed the court of Richards's mental-health issues at sentencing but that two doctors said he did not meet the *M'Naghten* test for insanity, making him criminally responsible for the new crimes. As a result, in the court's view, there was no reasonable probability that the trial court would have found that Richards's failure to appear was not willful.

After the postconviction court's order was summarily affirmed on appeal, Richards petitioned a federal district court for a writ of habeas corpus. *See* 28 U.S.C. § 2254. The district court denied the petition, finding that the state court's decision was reasonable and so entitled to deference. Richards now appeals.

## II.

We review the district court's denial of a state prisoner's § 2254 petition *de novo*, but we review the state habeas court's decision with deference. *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010); *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254–55 (11th Cir. 2002). Where the final state court to adjudicate the merits of a petitioner's claim simply affirms a lower court's decision without explaining its reasoning, we "look through" to the last reasoned state-court decision and assume that the unexplained decision adopted that reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, we look through the appellate

court's summary affirmance to the state postconviction court's reasoned order denying Richards's claims.

An ineffective-assistance-of-counsel claim requires a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Prejudice means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Under 28 U.S.C. § 2254(d), we may grant the writ of habeas corpus only if the state court's decision "was contrary to, or involved an unreasonable application of" *Strickland*, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under these standards, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## A.

We start with Richards's argument that counsel was ineffective for failing to move to withdraw the plea when the trial court declared it would not be bound by the plea agreement.

Florida courts permit what is commonly referred to as a "*Quarterman* agreement," where a trial court allows a defendant to be released after the plea hearing, provided he agrees that, if he

fails to appear at the sentencing hearing, the court may impose a sentence greater than the one specified in the plea agreement. *See, e.g.*, *Ingram v. State*, 291 So. 3d 1009, 1010–11 (Fla. Dist. Ct. App. 2020). A plea agreement can be modified by the trial court during the plea colloquy if the defendant clearly and unequivocally understands and accepts those terms. *Norman v. State*, 43 So. 3d 771, 773 (Fla. Dist. Ct. App. 2010). But "a trial court may not unilaterally impose additional conditions of a plea agreement after it has formally accepted the plea agreement without the acquiescence of the defendant or his counsel." *Id.*

Richards relies primarily on *Smith v. State*, 988 So. 2d 1258 (Fla. Dist. Ct. App. 2008), in which the appellate court held that terms added by the trial court providing for an enhanced sentence for failure to appear "were not part of the plea agreement." *Id.* at 1261. The court reasoned that *Quarterman* did not control because "[t]he trial court accepted Smith's plea before articulating what would occur if Smith failed to appear at sentencing," and there was no subsequent agreement to make the terms a condition of his plea, despite the defendant's saying he understood them. In Richards's view, his case is like *Smith*, and so he was entitled to an opportunity to withdraw his plea, making his counsel ineffective for failing to file a motion to withdraw.

But "[i]t is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted); *see also*

*Harrington*, 562 U.S. at 102–02 (stating that federal habeas review is "not a substitute for ordinary error correction through appeal"). In *Callahan*, we rejected the appellant's argument that the state court unreasonably applied *Strickland* because it was dependent on the conclusion that the state court made an erroneous determination of state of law.  427 F.3d at 931–32.  We explained that, where "the state court has told us that if [defendant's trial counsel] did make the objection it would not have been successful" under state law, the defendant "cannot be prejudiced by his counsel's failure to make a losing objection."  *Id.*

Here, the state court did not unreasonably apply *Strickland* because, as in *Callahan*, Richards's argument depends on a conclusion that the state court misinterpreted state law.  *See id.*  The state court expressly found that Richards was subject to a valid *Quarterman* agreement, which is purely a matter of state law.  Even if we might have decided the matter differently had it been our call to make, we cannot say the state court's decision was based on an unreasonable determination of what occurred during the plea hearing.  *See* 28 U.S.C § 2254(d)(2).  Richards points to *Smith*, but that case is factually distinguishable because, in contrast to *Smith*, the trial court here expressly articulated the *Quarterman* terms before accepting Richards's guilty plea.  *See Norman*, 43 So. 3d at 773; *cf. Smith*, 988 So. 2d at 1259–61.

Because the state court has told us that, under state law, Richards was not entitled to withdraw his plea despite the enhanced sentence for failing to appear, it cannot be unreasonable to

also determine there was no probability of a different result had counsel filed a motion to withdraw. *See Callahan*, 427 F.3d at 931–32.

## B.

Nor did the state court unreasonably conclude that Richards could not establish *Strickland* prejudice based on counsel's failure to advise him that he could contest the willfulness of his failure to appear, and to make such an argument to the trial court. Richards asserts that, had counsel properly advised him, he would have presented expert testimony at sentencing that mental illness contributed to his arrest. The expert's report stated, among other things, that (1) Richards was sane when he robbed the bank, but his mental illness likely was a significant contributor to his actions and should be viewed as a mitigating factor; (2) he was admitted for psychiatric reasons on several occasions; and (3) he has bipolar disorder.

Under Florida law, "where timely appearance for sentencing is made a condition of a plea agreement, a non-willful failure to appear will not vitiate the agreement and permit the trial court to impose some greater sentence." *Johnson v. State*, 501 So. 2d 158, 160-61 (Fla. Dist. Ct. App. 1987). In other words, the violation of a *Quarterman* agreement must be "willful" for the court to impose an enhanced sentence. *Ingram*, 291 So. 3d at 1011–12. A trial court must offer "an opportunity to explain why [the defendant] failed to timely appear at sentencing" and then make a factual determination as to whether the failure to appear was willful. *Lowery v. State*, 22 So. 3d 745, 749 (Fla. Dist. Ct. App. 2009).

Generally, Florida courts treat the failure to appear as willful "if the defendant was incarcerated because he had committed a new offense after entering into the agreement." *Orange*, 983 So. 2d at 5–6. Nevertheless, a defendant's mental illness may affect the willfulness determination. *See Marcano v. State*, 814 So. 2d 1174, 1176–77 (Fla. Dist. Ct. App. 2002) ("[M]ental illness can render violations of probation not willful and substantial."). More broadly, Florida utilizes the *M'Naghten* test, under which a defendant is not criminally responsible for his conduct if he can prove he did not know of the nature of consequences of his act or was unable to distinguish right from wrong. *Patton v. State*, 878 So. 2d 368, 375 (Fla. 2004).

Here, it was not unreasonable for the state postconviction court to determine there was not a reasonable probability that additional expert testimony on Richards's mental-health status would have resulted in the state trial court's finding that his failure to appear was non-willful.

At the sentencing hearing, defense counsel addressed Richards's arrest and mental health, pointing out that a doctor who had performed a psychological evaluation found that Richards suffered from, and had been in intensive treatment for, bipolar disorder at the time that the new offenses occurred. Richards then personally addressed the court regarding his failure to appear. As explanation for the new offenses, Richards stated that he had been receiving mental-health treatment since 1998 but had stopped taking his medication. As a result, he "began hearing voices and hallucinating

and ended up going into the bank with a note and no weapon and asking them for money." He was evaluated for that criminal case, and two doctors found that he suffered from mental duress but did not meet the *M'Naghten* test. Richards emphasized that he "had no intentions of any of this ever happening, disrespecting the Court or making this drag on for a year-and-a-half," and that he had "wanted to get this resolved as bad as anybody else."

The record of the sentencing hearing shows, in sum, that Richards received "an opportunity to explain why [he] failed to timely appear at sentencing." *Lowery*, 22 So. 3d at 749. More to the point, the record shows Richards informed the trial judge that his criminal conduct was not intentional because he was "hearing voices and hallucinating" after he had stopped his medication, even if he did not meet the *M'Naghten* test. The expert testimony Richards asserts he would have provided but for counsel's error—that he was sane, but that mental illness contributed to his criminal conduct—is largely cumulative of the information presented at sentencing. On this record, therefore, we cannot say it was unreasonable to conclude that any deficiency in counsel's performance on the issue of willfulness did not create a reasonable probability of a different result.

Because, at worst, "fairminded jurists could disagree on the correctness of the state court's decision," *Harrington*, 562 U.S. at 101, Richards has not shown he is entitled to federal habeas relief under § 2254(d). We therefore affirm the denial of his petition.

**AFFIRMED.**